UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| RANDALL MEEKER A/K/A RANDY MEEKER, et al., | : : : : | |
| Plaintiff, | : : | |
| v. | : : | |
| MEDICAL TRANSPORT, LLC, and SENTARA HEALTHCARE, | : : : | Civil Action No: 2:14-cv-426 |
| Defendant. | : : : | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Conditional Collective Action Certification Pursuant to 29 U.S.C. § 216(b). ECF No. 13. On behalf of themselves and others similarly situated, Plaintiffs brought this action to recover unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. The parties consented to proceed before a United States Magistrate Judge, ECF Nos. 7, 9, and all further proceedings were referred to the undersigned in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, ECF No. 11.

Plaintiffs request that the Court conditionally certify a collective class action and transmit notice to potential class members. Plaintiffs filed their motion seeking conditional certification on February 6, 2015. ECF No. 13. Defendants responded in opposition on February 24, 2015, ECF No. 20, and Plaintiffs replied, ECF No. 21. On March 26, 2015, the Court conducted a hearing on the pending motion.

1

## I. Factual and Procedural Background

Plaintiffs are current and former employees of Medical Transport, LLC and Sentara Healthcare who were employed as ambulance crew personnel in the positions of driver, emergency medical technician ("EMT"), or paramedic to facilitate emergency medical transport. ECF No. 14 at 2. Medical Transport has nineteen offices in two divisions: Division 1 encompasses Eastern Virginia, and Division 2 includes Western Virginia. Plaintiffs alleged that Defendants failed to pay overtime compensation for automatic deductions of thirty-minute meal breaks without reimbursement (the "meal break deduction claim") and off-the-clock activities such as "return[ing] phone calls, emails and texts" and "certain mandatory training time" (the "off-the-clock claim"). *Id.* at 5.

In support of their meal deduction claim, Plaintiffs relied on a written policy instituted by Defendants whereby employees' break periods were automatically deducted from each employee's shift, regardless of whether the employee in fact took such a break. *Id.* at 4. Two different polices governed the relevant time period. The first policy provided that the employee could only recover payment for the meal break if the employee submitted a request to have the deduction reversed, and the supervisor determined that the employee's crew "was busy more than 70% of its shift as determined by the UH/U report." *Id.* Plaintiffs allege that if a single, long-distance transport took up an entire eight hour shift, the UH/U report would not categorize that shift as meeting the 70% threshold, despite the fact that eight hours were spent working. In May 2014, Defendants amended the meal deduction policy to omit any reference to the 70% busyness threshold as demonstrated in the UH/U report, leaving approval solely to the discretion of the supervisor. *See* ECF No. 20 at 5-6. Plaintiffs contended that the amended policy still offends the FLSA as the policy's language that employees "may" request pay reimbursement

2

implies that seeking compensation for overtime work is voluntary.  Plaintiffs do not rely on any written policy pertaining to their off-the-clock claim, but rather, Defendants' practice of failing to maintain any "methods or tracking systems for recording this type of time worked." *See, e.g.,* ECF No. 14, attach. 5 at 4.

## II. Legal Standard

To help ensure an employer's liability for violations of the FLSA, Section 216(b) permits a plaintiff to bring suit "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b).  Neither Section 216(b) nor the Fourth Circuit has specifically defined a standard for determining whether a potential class is sufficiently "similarly situated" to permit conditional certification.  However, district courts within the Fourth Circuit generally follow a two-step approach when considering whether plaintiffs are similarly situated. *See, e.g., Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. June 22, 2009).  At the first step, the notice or conditional certification stage, the court considers whether to provide notice to potential class members of the pending litigation utilizing "a fairly lenient standard." *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006).  "The primary focus in this inquiry is whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" *Houston v. URS Cop.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) (quoting *Choimbol*, 475 F. Supp. 2d at 563).  At the second step, the decertification stage, discovery has usually been completed, and the court implements a "heightened fact specific standard" to the similarly situated determination, ultimately considering whether the class action will proceed to trial. *Choimbol*, 475 F. Supp. 2d at 563.  In the "rare case[] . . . when there is sufficient evidence in the record at the notice stage to reveal that certification of the collective action is not appropriate," "the court may collapse the two-stage

3

certification process and deny certification outright." *Stone v. SRA Int'l, Inc.*, No. 2:14cv209, 2014 WL 5410628, at *3 (E.D. Va. Oct. 22, 2014) (citing *Purdham*, 629 F. Supp. 2d at 547).

District courts within the Fourth Circuit are divided as to whether a higher standard should be used at the conditional certification stage when some discovery has been completed. For example, the Western District of North Carolina used an "intermediate" standard of review, in which the court determined "whether a sound basis exists for proceeding as a collective action while also considering all evidence available at the time." *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-cv-592, 2011 WL 4351631, at *5 (W.D.N.C. Sept. 16, 2011) (citation omitted). There, the court was persuaded to apply this standard as the parties had three months of discovery, exchanged interrogatories and documents, and took a number of plaintiffs' depositions. *Id.* Conversely, the District of Maryland has repeatedly declined to apply an increased standard of review to the conditional certification stage even when the parties have completed some discovery. *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566-67 (D. Md. 2012); *Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 826-28 (D. Md. 2012). Here, the parties have only exchanged paper discovery and have yet to take any depositions, and Defendants have presented no controlling authority from the Fourth Circuit or cases from the Eastern District of Virginia mandating a heightened standard at this stage of the proceedings. Accordingly, the Court declines to deviate from the regularly applied lenient standard implemented at the conditional certification stage.

To achieve conditional certification, plaintiffs must satisfy two criteria. First, they must "make a preliminary factual showing that a similarly situated group of potential plaintiffs exists." *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) (citation omitted). Second, they must "'demonstrate they and potential plaintiffs together were victims of a common

policy or plan that violated the law.'" *Ceras-Campo v. WF P'ship*, No. 5:10-cv-215, 2011 WL 588417, at *2 (E.D.N.C. Feb. 9, 2011) (quoting *Patten v. Thomson Corp.*, 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005)). Plaintiffs and putative class members need not have identical situations; "[d]ifferences as to time actually worked, wages actually due and hours involved are, of course, not significant to this [similarly situated] determination." *De Luna-Guerrero v. N.C. Grower's Ass'n Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (citation omitted).

### III. Analysis

Evaluating the criteria Plaintiffs must satisfy in inverse order, Plaintiffs have demonstrated that they and other potential class members were victims of a uniform policy or practice that violated the law. Regarding the meal deduction claim, Plaintiffs relied exclusively on a written policy, which irrespective of any amendments, applied to every employee. Plaintiffs argued that the original policy is unlawful because reimbursement is derived from arbitrary reports which do not accurately reflect the time worked by employees. Moreover, Plaintiffs claimed that the amended policy is unlawful because it suggests to employees that reimbursement of overtime payment is optional for them and dependent on the employee seeking reimbursement. Defendants argued that Plaintiffs fail to sufficiently prove the existence of an unlawful policy or practice because automatic break deduction policies are generally lawful. However, Plaintiffs do not argue that the policy itself is unlawful; rather, the process for reimbursement *after* automatic deduction is unlawful.

Regarding the off-the-clock claim, Plaintiffs argued that the uniform policy or practice is the absence of a method of tracking and reporting off-duty work, and that employees are obligated to obtain required training on their own time without compensation. In response, Defendants argued that Plaintiffs failed to sustain any allegation of an unlawful policy or practice

relating to the off-the-clock claim because Plaintiffs do not cite to any specific policy or practice, but this argument misconstrues Plaintiffs claim. Plaintiffs cited the general practice of Defendants *not* to employ any method of tracking overtime and requiring off-the-clock training as the unlawful policy or practice. This practice, albeit not a written policy, is sufficient to carry Plaintiffs' burden at this stage of the proceedings. Accordingly, the Court FINDS that Plaintiffs have demonstrated that they and putative class members were subject to a uniform policy or practice that violated the FLSA.

Second, Plaintiffs must demonstrate that they are similarly situated to the putative class members they seek to represent. For the meal deduction claim, all members of the ambulance crew are subject to the automatic deduction policy. Regardless of the crew member's position or location of operation, the policy applies across the board. Similarly, for the off-the-clock claim, all crew members are subject to the same claimed lack of method for tracking and recording off-duty work, and according to the declarations, ambulance drivers, EMTs and paramedics all have certification and licensing requirements that necessitate off-duty training for which employees are often not paid. Defendants argued that Plaintiffs are not similarly situated because resolution of this claim would require a highly individualized determination citing differences in responsibilities, shift lengths, and workweeks. Additionally, they highlighted Plaintiffs' reliance solely on declarations from the Hampton location as evidence limiting the applicability of the claim to putative class members at that specific location. However, Plaintiffs and putative class members need not be identical in all respects to meet the similarly situated standard; regardless of the length of shift, the facility, and the employee's responsibility, the employee was subject to the automatic deduction policy, the same lack of method for tracking off-duty work, and the same practice that required training not be compensated. This is sufficient to establish that

6

Plaintiffs and putative class members are similarly situated with respect to both the meal deduction and off-the-clock claims. Thus, under the lenient standard of review applied at the conditional certification stage, the Court FINDS that Plaintiffs have established that they are similarly situated to the putative class members.

In their motion, Plaintiffs also seek appointment of their attorneys, the law firms of Patten, Wornom, Hatten & Diamonstein, L.C. and Richard J. Serpe, P.C., and counsel James H. Shoemaker, Jr., Richard J. Serpe, Cindra Dowd, Jason Messersmith and Patricia Melochick be appointed as class counsel. Defendants do not object to the appointment, and good cause having been established, the Court FINDS that the aforementioned counsel should be appointed class counsel.

Finally, Plaintiffs have proffered a proposed Notice to be issued to all potential class members. Defendant opposes the proposed Notice on several grounds. The Court declines to enter the proposed Notice and instead DIRECTS the parties to meet and confer to devise a mutually acceptable Notice for submission to the Court. The Notice should include, *inter alia*, information concerning putative class members' right to obtain their own counsel and bring an individual lawsuit.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Conditional Class Certification and Notice under the FLSA, 29 U.S.C. § 216(b), to include the following similarly situated employees in the collective action: all FLSA non-exempt and/or hourly ambulance crew employees who were paid wages by Medical Transport, LLC between August 21, 2011 and the

present date and who were improperly denied overtime pay to which they were entitled under the FLSA.[1]

**IT IS ORDERED** that Plaintiffs' counsel be appointed as class counsel.

**IT IS ORDERED** that Defendants shall provide to Plaintiffs' counsel the names, last known mailing addresses, home and/or mobile phone numbers, and email addresses of all potential members of the conditionally certified class within fifteen (15) days of the date of this Order.

**IT IS ORDERED** that within fifteen (15) days of the date of this Order, the parties shall provide the Court with a joint proposed form of Notice to potential members to be approved by the Court. The form of Notice and Consent shall specify that the matter has been referred to the undersigned United States Magistrate Judge by consent of the parties. If the parties cannot agree on the terms of Notice, they shall submit a draft by the deadline and the Court will issue an approved Notice.

**IT IS ORDERED** that any consents to joinder in this action by which additional persons join this litigation as plaintiffs under 29 U.S.C. § 216(b) must be filed with the Clerk of the Court no later than sixty (60) days after the date the Court approves the form of Notice to the class.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
April 1, 2015

---

[1] Defendants argued that this is an impermissible fail-safe class. However, this Court has recently approved a nearly identical class. *See, e.g., Winnegear v. City of Norfolk*, No. 2:12-cv-560, ECF No. 90 (E.D. Va. Feb. 3, 2014).